UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

KENNETH SHIELDS,

                        Plaintiff,

v.                                             Case No. 25-cv-892-pp

TRACY THOMPSON, *et al.*,

                        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Kenneth Shields, who is incarcerated at Oshkosh Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants inadequately treated his serious medical need. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On July 8, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $58.54. Dkt. No. 6. The court received that fee on July 25, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). <u>See</u> <u>Cesal v. Moats</u>, 851 F.3d 714, 720 (7th Cir. 2017) (citing <u>Booker-El v. Superintendent, Ind. State Prison</u>, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v.</u>

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The complaint names as defendants Advanced Care Provider (ACP) Tracy Thompson; Nurses Baginski, Brickner, Chase, Hardel and Tousey; Health Services Unit (HSU) Manager Kelly Pelky; and Oshkosh Warden Brian Cahak. Dkt. No. 1 at ¶¶4–11. Other than Warden Cahak, who he sues only in his official capacity, the plaintiff sues all defendants in their individual capacities only. Id. at ¶13.

The plaintiff alleges that on February 11, 2025, he "was rushed to the emergency room" at Ascension Mercy Hospital in Oshkosh because he could not breathe and spent seven days in the intensive care unit after undergoing

emergency trachea bypass surgery. Id. at ¶14. He says that during the surgery, hospital staff discovered an infected cystic mass, which the plaintiff says "great[l]y contributed [to] the need for the" bypass. Id. The plaintiff alleges that "[a]ll defendant nurses" and Thompson knew about the growth in December 2024 but "chose to do the minimum and allowed the infection and cystic mass to grow." Id. at ¶15. The plaintiff states that he could have died by asphyxiation before being hospitalized. Id.

The plaintiff alleges that his medical records show that he saw each defendant at least once about this issue before February 11, 2025, while his condition worsened. Id. at ¶16. On January 13, 2025, he saw Nurse Baginski, who asked only "cursory routine questions," gave the plaintiff nasal spray and told him to follow his ineffective plan of care. Id. at ¶17. On January 17, 2025, he saw Nurse Brickner, who falsely described the plaintiff's condition as "mild swelling," did not document the plaintiff's complaints of pain and again instructed the plaintiff "to follow the plan of care." Id. at ¶18. The plaintiff alleges that his swelling was so bad by then that it "could be clearly seen up[ ]to 20-25 feet away." Id. He says that the nurses failed to document his concern "about infection and the quickly expanding mass on his throat." Id.

On January 23, 2025, the plaintiff saw Nurse Chase, who described the mass on the plaintiff's throat as "the size of a ping-pong ball" yet did not note any signs or symptoms of infection or swelling. Id. at ¶19. Chase also told the plaintiff to continue with the plan of care, even though the plaintiff told Chase that he was now unable to swallow liquids. Id. On January 31, 2025, the

4

plaintiff saw Nurse Hardel, who documented that the plaintiff's growth was three centimeters in size and denied that the plaintiff was in pain. Id. at ¶20. But Hardel also noted that the plaintiff was seen for "pain with painful lump in right neck." Id. The plaintiff says that Hardel asked "the same cursory questions," gave him Tylenol and again encouraged him to follow the same plan of care. Id.

On February 6, 2025, the plaintiff saw ACP Thompson after he submitted a request to the HSU for treatment of the swelling in his throat. Id. at ¶21. Thompson documented that the plaintiff had redness and puffiness on the right side of his face and a growth of "5.2 x 3.4 centimeters." Id. The plaintiff alleges that Thompson told him "that he was fine because he could still talk." Id. The plaintiff told Thompson that he could not swallow liquids and was becoming worried about dying in his sleep, and she responded that "dying or choking to death . . . had not happened yet." Id. Thompson ordered off-site tests for the plaintiff and again encouraged him to follow the plan of care. Id. The plaintiff accuses Thompson of throwing his "name in a hat with the hundreds of other inmates waiting on tests" and returning him to his cell "with no change in the ineffective plan of care." Id.

On February 8, 2025, the plaintiff saw Nurse Tousey. Id. at ¶22. He alleges that the lump in his throat had grown to the size of a golf ball, and he had a new growth the size of a pea on the left side of his neck. Id. The plaintiff says that he "was sent out that day" to the hospital, but that he returned to

5

Oshkosh the same day. Id. He does not say who ordered that he be sent to the hospital.

On February 11, 2025, the plaintiff again saw ACP Thompson, who documented that the plaintiff was in pain and having difficulty breathing and swallowing food but did not document that he was having difficulty swallowing liquids. Id. at ¶23. The plaintiff reiterates that he was sent to Ascension Mercy Hospital in Oshkosh (again, he does not say who ordered him sent to the hospital), where he underwent an emergency trachea bypass. Id. The plaintiff says that he remained in the ICU for seven days to address his infection, which "nearly killed him" and caused the swelling and redness that the nurses had observed. Id. at ¶24.

The plaintiff claims that HSU Manager Pelky "failed to train and/or properly supervise her nursing staff" and that she "has a practice, policy and custom of hiring medical staff/retaining medical staff" who "do as they are told and not what they really should do as professional medical professionals." Id. at ¶25. He alleges that the nurses are not supervised or properly trained to respond to emergency situations like the plaintiff's. Id. He claims that Warden Cahak "has adopted a practice, policy and custom of inaction," which amounts to a failure to protect him and all incarcerated persons at Oshkosh. Id. at ¶26. The plaintiff says that Cahak "has failed to personally ascertain that each person at the [HSU] is properly supervised and/or trained, which failure equates to deliberate indifference" to the plaintiff's rights and the rights of other persons incarcerated at Oshkosh. Id. He asserts that Cahak has a

practice, policy or custom of failing to ensure that other Oshkosh staff are properly trained and supervised. Id. at ¶27. The plaintiff reiterates that this policy or practice renders himself and "the entire inmate population that needs health services at risk." Id. He faults Cahak for insisting that incarcerated persons "utilize the chain of command and the Inmate Complaint Review System," which the plaintiff calls "impediments to filing a civil action." Id. The plaintiff claims that Cahak and Pelky "know that their nurses and other staff" are unqualified and untrained "to discern infectious diagnosis from looking at a patient," which put the plaintiff's life at risk. Id.

The plaintiff claims that the nurse defendants and Thompson "all failed to train and supervise each other," which he says led to them failing to properly diagnose his infection and downplaying the severity of his condition. Id. at ¶¶29–32. He again faults Cahak and Pelky for failing to properly supervise and/or train the nurses and Thompson. Id. at ¶32. He claims that the nurses' action in prescribing him the same over-the-counter medications despite his worsening condition constitutes deliberate indifference to his medical need in violation of the Eighth Amendment. Id. at ¶¶34–35. He claims that Cahak's failure to ensure medical staff were properly trained also violated his rights under the Eighth Amendment. Id. at ¶36. The plaintiff also claims that the defendants' actions constituted negligence in violation of state law. Id. at ¶37.

The plaintiff seeks declaratory judgment stating that all defendants violated his rights under federal and state law. Id. at p.9. He also seeks

7
Case 2:25-cv-00892-PP   Filed 09/16/25   Page 7 of 16   Document 7

compensatory damages against all defendants except Warden Cahak and punitive damages against all defendants. Id.

C. Analysis

The court analyzes the plaintiff's allegations about his inadequate medical treatment under the Eighth Amendment. Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*). "The standard of deliberate indifference 'requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk.'" Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 763 (7th Cir. 2021) (quoting Huber v. Anderson, 909 F.3d 201, 208 (7th Cir. 2018)).

The plaintiff alleges that he suffered from an infection in his throat, which caused pain, swelling, redness, difficulty breathing and difficulty swallowing solids and liquids. He says he was eventually hospitalized and required emergency surgery to save his life. The court finds these allegations sufficient to satisfy the objective component of an Eighth Amendment claim. See Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997) (quotation

8

Case 2:25-cv-00892-PP    Filed 09/16/25    Page 8 of 16    Document 7

omitted) (factors relevant to determining whether "a prisoner has a serious medical need" include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

The plaintiff's allegations against ACP Thompson and Nurses Baginski, Brickner, Chase and Hardel also satisfy the subjective component. The plaintiff alleges that between December 2024 and February 11, 2025 (when he was hospitalized), he saw Thompson and each of these nurses at least once. He alleges that these defendants assessed his condition, documented his symptoms and prescribed him treatment. Those allegations do not satisfy the demanding standard to demonstrate deliberate indifference. But the plaintiff says more. He alleges that these defendants ignored his complaints of pain, disregarded or incorrectly documented his symptoms and continued to prescribe him ineffective over-the-counter medications despite witnessing his worsening condition. A medical official who "doggedly persist[s] in a course of treatment known to be ineffective" may demonstrate the kind of "'blatantly inappropriate'" treatment that constitutes deliberate indifference. Greeno, 414 F.3d at 654–55 (quoting Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996)). The plaintiff's allegations allow the inference that Thompson and these nurses recognized that the plaintiff's condition was worsening but failed or refused to alter the "plan of care" that they repeatedly told him to follow. Those allegations

are sufficient to state an Eighth Amendment claim against Thompson and Nurses Baginski, Brickner, Chase and Hardel.

But the complaint does not state a claim against Nurse Tousey. The complaint alleges that Tousey saw the plaintiff on February 8, 2025 and documented that the lump on his neck had grown to golf-ball size and that a second lump had appeared on the left side of his neck. The complaint then alleges that the plaintiff "was sent out that day" to Ascension Mercy Hospital in Oshkosh. The complaint does not say *who* sent the plaintiff to the hospital, but the court infers that Tousey may have recommended or ordered this because she is the nurse the plaintiff says he saw on February 8. The plaintiff returned to Oshkosh the same day, which could suggest that hospital staff did not determine that he needed to be hospitalized for the swelling in his neck. It could be that Tousey did not order the plaintiff to be sent to the hospital, but the complaint does not provide any information about who else may have done so. These scant facts are insufficient to show that Tousey was aware of and disregarded the plaintiff's worsening medical issue. The court will dismiss Nurse Tousey.

The plaintiff states an Eighth Amendment claim against Pelky. The plaintiff does not allege that Pelky saw or personally treated the plaintiff's condition in December 2024 through February 2025. He seeks to hold her liable as the manager of the HSU and supervisor of the nurses who he says did not provide adequate treatment. A supervisor like Pelky may not be held liable under §1983 for what her subordinate staff do; she may be held liable only for

her own actions or inaction. See Iqbal, 556 U.S. at 676; Day v. Subsecretario del Sistema Penitenciario Federal, 838 F. App'x 192, 193 (7th Cir. 2021) ("Supervisors are responsible for what they do themselves, not for what their subordinates do."). But a supervisor also may be held liable if she knows about the unlawful conduct and facilitates, approves or condones it or "turn[s] a blind eye for fear of what [she] might see." Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001). Although the plaintiff does not allege that Pelky personally treated him, he alleges that she has a practice or policy of hiring unqualified staff, providing insufficient supervision and/or instructing staff not to follow proper medical protocol. The court must accept these allegations as true at the pleading stage of the case. With that standard in mind, the court finds that the plaintiff states an Eighth Amendment claim against Pelky. The plaintiff will be required to provide evidence proving his allegations in the later stages on this case.

The court will not allow the plaintiff to proceed on a separate claim that ACP Thompson or Nurses Baginski, Brickner, Chase and Hardel failed to train each other. The plaintiff does not allege that any of these defendants have supervisory or managerial responsibilities, and they cannot be held responsible for not doing another employee's job of training staff. See Burks v. Raemisch, 555 F.3d 592, 599 (7th Cir. 2009). Even if the plaintiff had stated sufficient facts to support this claim, the court is allowing the plaintiff to proceed on an Eighth Amendment deliberate indifference claim against these defendants. Also allowing him to proceed on a failure-to-train claim would duplicate that claim

11

and its potential remedy. See Reid v. Unilever U.S., Inc., 964 F. Supp. 2d 893, 919 (N.D. Ill. 2013) (dismissing duplicative claim that "allege[d] identical facts and request[ed] the same remedy under the same statute" as claim that court allowed to proceed).

The plaintiff seeks to proceed against Warden Cahak for failing to supervise HSU staff. But Cahak does not have an obligation to ensure that all HSU staff are properly trained and supervised. As Warden, he is entitled to leave those duties to the staff who supervise the HSU, like Pelky. See Burks, 555 F.3d 595. The plaintiff also faults Cahak for telling incarcerated persons to follow the chain of command through the institutional complaint review system. The plaintiff calls that process an "impediment" to filing a civil lawsuit, but that is incorrect. Filing an institutional complaint is a *prerequisite* to filing a civil lawsuit, not an impediment. See 42 U.S.C. §1997e(a). The plaintiff also seeks to sue Cahak for harm caused to other persons incarcerated at Oshkosh. But the plaintiff may litigate only on his own behalf and may not assert the rights of any other person. See Korte v. Sebelius, 735 F.3d 654, 668 (7th Cir. 2013); Massey v. Helman, 196 F.3d 727, 739–40 (7th Cir. 1999).

More important, the plaintiff sues Cahak in his official capacity only. Claims against state employees in their official capacities represent another way to plead an action against the entity that they represent or for which they work. Graham, 473 U.S. at 165 (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the claim against Cahak in his official capacity as having been brought against the Department

of Corrections, the agency for which Cahak works. Id. at 165–66. Because claims against the DOC are "no different from a suit against the State," the court construes this claim as having been brought against the State of Wisconsin. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. That means the plaintiff cannot recover damages against Cahak in his official, versus his individual, capacity. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

The plaintiff also seeks declaratory relief against all defendants. But declaratory judgment is available under §1983 only "if there is a continuing violation of federal law." Kress v. CCA of Tenn., LLC, 694 F.3d 890, 894 (7th Cir. 2012) (citing Green v. Mansour, 474 U.S. 64, 73 (1985)). The plaintiff alleges that the harm to him ended in February 2025, after he was hospitalized and underwent emergency surgery. He does not allege that he continues to suffer from the defendants' inadequate medical treatment. That means that he may not seek declaratory relief and may seek only damages in this lawsuit. Because damages are not available against Warden Cahak in his official capacity (as the court explained above), the court will dismiss Cahak as a defendant.

Finally, the plaintiff seeks to proceed on a state law negligence claim. Federal courts may exercise supplemental jurisdiction over a state law claim

13
Case 2:25-cv-00892-PP   Filed 09/16/25   Page 13 of 16   Document 7

that is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). Negligence does not violate the Constitution. See Estelle, 429 U.S. at 106; Brown v. Peters, 940 F.3d 932, 937 (7th Cir. 2019). But the plaintiff may raise a negligence claim under state law. Because the facts underlying the plaintiff's claim of negligence are the same as those underlying his Eighth Amendment claim, the court will exercise supplemental jurisdiction over the plaintiff's state law claim against the remaining defendants.

To summarize: the plaintiff may proceed against defendants Thompson, Pelky, Baginski, Brickner, Chase and Hardel on an Eighth Amendment claim of deliberate indifference to his serious medical needs. He also may proceed against these defendants on a state law claim of negligence. The plaintiff may seek damages but not declaratory relief. The court will dismiss Nurse Tousey and Warden Cahak because the complaint does not state viable or plausible claims for relief against either of them.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DISMISSES** defendants Nurse Tousey and Warden Brian Cahak.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the

complaint and this order to the Wisconsin Department of Justice for service on defendants Tracy Thompson, Nurse Baginski, Nurse Brickner, Nurse Chase, Nurse Hardel and Kelly Pelky. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$291.46** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Oshkosh Correctional Institution, where the plaintiff is incarcerated.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge

15

Case 2:25-cv-00892-PP    Filed 09/16/25    Page 15 of 16    Document 7

institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 16th day of September, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

---

Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.